IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-HC-2027-FL

| | | |
|---|---|---|
| MICHAEL EUGENE HUNT,<br><br>Petitioner,<br><br>v.<br><br>LESLIE COOLEY-DISMUKES,<br><br>Respondent.[1] | ) | ORDER |

Petitioner, a state inmate proceeding pro se, petitions this court for a writ of habeas corpus under 28 U.S.C. § 2254. The matter is before the court on respondent's motion to dismiss (DE 10) under Federal Rule of Civil Procedure 12(b)(6). Petitioner responded. Also before the court is petitioner's motion for summary judgment (DE 15). In this posture, the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

On September 19, 1980, petitioner was convicted following jury trial in Vance County Superior Court of first-degree murder. (Resp's Mem. Ex. 1 (DE 11-2) at 2). The trial court sentenced petitioner to life in prison. (Id.)

Following imposition of the sentence, petitioner appealed his conviction to the North Carolina Supreme Court.[2] On direct appeal, petitioner argued that the trial court erred by

[1] Petitioner named "State of North Carolina" and "United States of America" as respondents. (See Pet. (DE 1) at 1). The custodian of the correctional facility in which petitioner is incarcerated is the proper respondent in an action filed under 28 U.S.C. § 2254. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Here, Leslie Cooley Dismukes, the Secretary of the North Carolina Department of Adult Correction, is the proper respondent. (See DE 11 at 1). The court constructively amends the case caption to reflect the correct respondent and will direct the clerk to amend the docket caption.

[2] Before December 1, 1995, a criminal defendant could appeal a life sentence without the possibility of parole directly to the North Carolina Supreme Court. See 1995 N.C. Sess. Laws ch. 204, §§ 1, 2.

admitting: 1) unsworn testimony regarding circumstances in which state's witness disclosed killing; 2) opinion testimony regarding characteristics of victim's wounds; 3) testimony regarding defendant's other crimes; 4) physical evidence, including weapons used and taken from the crime scene; and 5) purported hearsay evidence. (Resp's Mem. Ex. 3 (DE 11-4) at 2-9). In an opinion filed March 3, 1982, the North Carolina Supreme Court affirmed the trial court's judgment. State v. Hunt, 305 N.C. 238, 248 (1982).

Petitioner then filed motion for appropriate relief ("MAR") in Vance County Superior Court June 25, 1982. (Resp's Mem. Ex. 5 (DE 11-6) at 2-17). Petitioner also filed amended MAR January 28, 1983. (Resp's Mem. Ex. 6 (DE 11-7) at 2-21). On July 11, 1983, both were denied by the trial court. (Resp's Mem. Ex. 7 (DE 11-8) at 2-20). Petitioner filed a petition for writ of certiorari with the North Carolina Supreme Court seeking review of the trial court's denial of his MAR, which was denied February 3, 1988. (Resp's Mem. Ex. 8 (DE 11-9) at 2).

Over subsequent decades, petitioner continued filing challenges to his conviction, including in this court on April 27, 2023. Hunt v. Buchholtz, No. 5:23-HC-2082-FL (E.D.N.C.). He later moved for voluntary dismissal January 8, 2025, which the court granted February 5, 2025. See Hunt, No. 5:23*HC-2082-FL (E.D.N.C. Feb. 5, 2025).

Petitioner filed this § 2254 petition September 5, 2023, in the United States District Court for the District of Columbia. (DE 1). The petition was transferred to this court. Petitioner broadly asserts these claims: 1) he was illegally arrested; 2) an exculpatory witness was not allowed to testify before the grand jury; 3) petitioner was never provided a copy of the information, complaint, or affidavits in his case; 4) the trial court lacked jurisdiction to "restrain[] petitioner of his liberty"; 5) the grand jury "was not made aware of the [informant's] motivation"

in testifying against him; 6) the prosecution failed to prove every element of jurisdiction; 7) petitioner was denied assistance of counsel in 1979 and 1980; 8) petitioner was denied due process because he was not allowed to subpoena documents or witnesses to show unlawful arrest, conviction, and sentence; and 9) the felony murder rule is cruel and unusual punishment. (See Pet. (DE 1) at 1-4).

On October 1, 2025, respondent filed the instant motion to dismiss, supported by memorandum of law and appendix of exhibits including records from petitioner's trial, sentencing, and state post-conviction proceedings. Petitioner responded in opposition and subsequently filed motion for summary judgment.

## STATEMENT OF THE FACTS

The facts underlying petitioner's convictions, as recounted by the North Carolina Supreme Court, are summarized below:

> The deceased, Walter Ray, lived alone in a trailer in Henderson, North Carolina. Ray was an alcoholic who sold whiskey from his trailer. He usually kept large sums of cash on his premises.
>
> Prior to 26 February 1979, defendant had been to Ray's trailer at least two times. On one particular occasion, that of 21 February 1979, defendant, his girlfriend and three teenagers went to Ray's trailer where they all drank and watched television for three hours. During the course of that evening, defendant tried to coax one of his female teenaged companions into taking Ray back to the bedroom and keeping him "occupied" so he could "rip off" Ray. The girl refused, whereupon defendant grabbed her from behind and beat her in the face.
>
> Five days later, defendant returned to the trailer intending to steal some money from Ray for the bail of his girlfriend. She had been arrested on a probation violation and jailed in the interim. Her bond had been set at $500.00. As Ray was closing up his (illegal) residential bar in the early morning hours, defendant put on some gloves, walked up behind Ray, grabbed him and put a knife against his throat. Defendant then forced Ray back to the bedroom. Defendant searched a closet and removed approximately $400.00 and a pistol from it. As defendant

> prepared to shoot Ray with the pistol, Ray begged him not to kill him that way. Defendant agreed to employ another murderous method.
>
> Defendant forced Ray to drink a pint of liquor and a couple of beers and allowed him to take some pills. When Ray became weak from the ingestion thereof, defendant slashed one of Ray's forearms near the wrist with a knife. Later he slashed him again near the original cut and waited while Ray slowly bled to death from the wounds. Defendant then left the trailer carrying the pistol and the money with him.
>
> Ray's body was discovered by a friend later that same night. The deceased was lying on his bed and appeared to be "cut all to pieces." A pocketknife was in his right hand, and his mouth contained the pink-colored residue of some sort of tablet. The investigating officers initially concluded that the death-causing wounds were self-inflicted.
>
> On the day following Ray's death, defendant paid $40.00 to a professional bondsman, and his girlfriend was released from jail. A day or two later, defendant visited William Thomas Edwards and sold him a .25 caliber pistol. Defendant told Edwards that he had taken the gun from Ray and further informed Edwards that he had killed Ray. Defendant explained to Edwards the precise details concerning the murder's accomplishment and the reasons for its commission. Edwards did not, however, convey this incriminating information to law enforcement officials until 8 August 1979. At that time, Edwards was serving a thirty-day jail sentence.
>
> Upon the foregoing information, defendant was subsequently arrested on 20 August 1979. He escaped from jail prior to his indictment in October 1979. He was eventually recaptured and brought to trial in September 1980.

Hunt, 305 N.C. at 239-40 (cleaned up).

**COURT'S DISCUSSION**

A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[3] "Factual allegations must be enough to raise a right to relief

[3] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the [petitioner]," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

Similarly, a motion to dismiss a § 2254 petition "tests the legal sufficiency of the petition, requiring the federal habeas court to assume all facts pleaded by the § 2254 petitioner to be true." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009); see Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009). In ruling on a motion to dismiss, the court looks to the record of the state proceeding, including affidavits and evidence presented in such proceedings, as well as other matters of public record. See, e.g., Cullen v. Pinholster, 563 U.S. 170, 180–82 (2011); Walker, 589 F.3d at 139.

B. Analysis

Respondent argues that petitioner's claims are untimely. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year statute of limitations applies to a petition for writ of habeas corpus filed by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1). The period begins to run from the latest of several dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. The one-year statute of limitations is tolled, however, during the time "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). An application for postconviction or other collateral review is pending from initial filing until final disposition by the state court. See Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). But the time between when a petitioner's conviction becomes final and when a petitioner files a state application for post-conviction relief counts against the one-year limitation period. See Holland v. Florida, 560 U.S. 631, 638 (2010); Hernandez v. Caldwell, 225 F.3d 435, 438–39 (4th Cir. 2000).

Relevant here, however, AEDPA's one-year statute of limitations did not become effective until April 24, 1996. See Hernandez, 225 F.3d at 438-39. For convictions that became final before that date, the one-limitation period ran from April 24, 1996, until April 24, 1997. Id.

These time limitations may be equitably tolled in extraordinary circumstances. "A federal habeas petitioner [challenging his state conviction under § 2254] may be entitled to equitable tolling of the one-year statute of limitations . . . where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Justus v. Clarke, 78 F.4th 97, 104–05 (4th Cir. 2023) (internal quotation omitted). But equitable tolling applies only if the petitioner can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649.

Here, the statute of limitations began to run uninterrupted on AEDPA's effective date, April 24, 1996. See Hernandez, 225 F.3d at 438-39. The instant petition was filed September

7, 2023—more than 26 years after petitioner's time to file had expired. See id.; 28 U.S.C. § 2244(d)(1). Petitioner has not shown that he diligently pursued his rights or that extraordinary circumstances prevented him from timely filing. See Holland, 560 U.S. at 649. Thus, he is not entitled to equitable tolling of the statute of limitations. For these reasons, the petition is dismissed as time barred.

C. Certificate of Appealability

Finally, the court considers whether to issue certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief, and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). After reviewing the claims presented in the habeas petition considering the applicable standard, the court concludes reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong, and no issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Accordingly, a certificate of appealability is denied.

## CONCLUSION

Based on the foregoing, respondent's motion to dismiss (DE 10) is GRANTED, and petitioner's motion for summary judgment (DE 15) is DENIED. The petition is DISMISSED

with prejudice, and a certificate of appealability is DENIED. The clerk is DIRECTED to close this case and to amend the docket caption as set forth in footnote one.

SO ORDERED, this the 25th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge